IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JERRY BOYD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION No. 2:08-CV-2225-RDP** |
| ) | |
| **MICHAEL ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OF OPINION**

Jerry Christopher Boyd ("Plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under Titles II and XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.    Procedural History**

Plaintiff filed his application for a period of disability, DIB and SSI benefits on January 20, 2005.[1] (Tr. 15). Plaintiff's applications were denied on April 22, 2005. (Tr. 27-29). On June 1, 2005, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 46). Plaintiff's case was heard by ALJ David L. Stephens on July 17, 2007. (Tr. 30-35, 288-338). In his

---

[1] The ALJ stated on the record that Plaintiff's applications were filed January 5, 2005. (Tr. 290). However, in reviewing the record, this court finds Plaintiff's applications were filed on January 20, 2005. (Tr. 27, 29, 48, 93, 112).

December 17, 2007 decision, the ALJ determined that Plaintiff was not eligible for a period of disability, DIB, or SSI benefits because he failed to meet the requirements for a disability under the Act and retained the residual functional capacity ("RFC") to perform some past relevant work, as well as other work existing in significant numbers in the national economy. (Tr. 12-26).

On February 18, 2008, Plaintiff applied to the Appeals Council for a review of the ALJ's decision. (Tr. 10-11). On September 26, 2008, the Appeals Council denied Plaintiff's request for review. (Tr. 4-7). This denial by the Appeals Council made the ALJ's decision the final decision of the Commissioner and, therefore, a proper subject for this court's review. (*Id.*).

Plaintiff was born on February 1, 1967 and has obtained his G.E.D. (Tr. 90, 199, 302). Plaintiff has also taken some vocational classes to learn welding, although he did not complete the entire course. (Tr. 199). Plaintiff worked a number of jobs between 1987 and 1997, never working more than one job at once. (Tr. 71-79). These jobs varied from fast food and food service jobs to jobs related to welding and floor installation. (*Id.*). Plaintiff alleges that he has been unable to engage in substantial gainful activity since December 29, 2004, when he became unable to work due to various mental impairments, including panic and anxiety attacks, mood disorder, depression, and schizoaffective disorder. (Tr. 49, 84, 90).

Plaintiff visited Cooper Green Hospital in Birmingham, Alabama, on May 4, 2004, complaining of anxiety and depression, as well as involuntary facial twitches and abnormal facial expressions. (Tr. 133-34). Plaintiff was prescribed Paxil and given injections of Peg Intron. (*Id.*).

On December 29, 2004, Plaintiff was taken to the Baptist Medical Center in Montgomery, Alabama, following an explosive outburst. (Tr. 144-89). Plaintiff had been living at the Faith Rescue Mission Program undergoing treatment for alcohol and drug abuse, including marijuana,

2

cocaine, and amphetamines. (Tr. 144). Plaintiff had apparently been doing well at the program until the outburst wherein he became angry and aggressive, throwing chairs and breaking windows. (*Id.*). The outburst was apparently prompted when Plaintiff became overwhelmed as he vacuumed the interior of a car and heard voices. (Tr. 164). Plaintiff was diagnosed with mood disorder, personality disorder, Hepatitis C, and substance abuse in partial remission. (*Id.*). At that time, Plaintiff had not taken Paxil in several months. (*Id.*). He was given a Global Assessment of Functioning ("GAF") score of 35. (Tr. 144).

In February 2005, Plaintiff began to seek treatment at the Montgomery Area Mental Health Authority. (Tr. 194-202). At that time, Plaintiff reported drinking occasionally, smoking about one pack of cigarettes per day, suffering from some recent kidney stones, and having occasional trouble sleeping. (Tr. 196). Plaintiff reported taking Seroquel and Wellbutrin. (Tr. 197). Plaintiff also reported depression, mania, and anxiety, noting that his attention span is short, he talks to imaginary people in his head, and experiences mood swings. (Tr. 198). It was noted that Plaintiff had previously been admitted to Meadhaven for mental illness. (Tr. 200).

On March 11, 2005, Plaintiff returned to the Baptist Medical Center. (Tr. 211-29). Plaintiff was diagnosed with mood disorder not otherwise specified, polysubstance abuse, and Hepatitis C. (Tr. 212). It was noted that Plaintiff experienced rage, had minimal family support, and was homeless. (*Id.*). At that time, Plaintiff was assigned a GAF score of 25. (*Id.*).

On March 15, 2005, Plaintiff underwent a physical RFC assessment. (Tr. 203-10). The state examiner found Plaintiff's statements to be partially credible and noted a history of Hepatitis C, but no other notable physical limitations. (Tr. 203, 208).

On April 7, 2005, Plaintiff saw Dr. William Beidleman, a psychologist. (Tr. 230-32). Dr. Beidleman diagnosed Plaintiff with mood disorder not otherwise specified with unlikely psychotic features, and generalized anxiety disorder. (Tr. 232). Dr. Beidleman also noted Plaintiff's history of polysubstance abuse and recent noncompliance with medications. (*Id.*). Dr. Beidleman assigned Plaintiff a GAF score of 59. (*Id.*).

On April 22, 2005, Dr. Gordon Rankart performed a Psychiatric Review Technique on Plaintiff pursuant to 20 C.F.R. § 416.920a. (Tr. 233-47). Dr. Rankart examined Plaintiff to determine if he met Listing 12.04 for affective disorders, 12.06 for anxiety-related disorders, 12.08 for personality disorders, or 12.09 for substance addiction disorders. (Tr. 233). Dr. Rankart found that Plaintiff did not specifically meet any of the stated listings, but was experiencing other problems such as mood disorder and personality disorder not otherwise specified. (Tr. 236-41). Dr. Rankart assessed Plaintiff with the following restrictions: activities of daily living - mild; difficulties in maintaining social functioning - moderate; and difficulties maintaining concentration, persistence or pace - moderate. (Tr. 243). Dr. Rankart noted Plaintiff's history of heavy drug abuse and that Plaintiff now claimed to have stopped using drugs, although he was "evasive" about his drug and alcohol history. (Tr. 246). Dr. Rankart felt that a genuine psychotic history was unlikely outside of substance abuse. (Tr. 246A). Consistent with Dr. Beidleman's scoring two weeks earlier, Dr. Rankart assigned Plaintiff a GAF score of 59. (Tr. 246).

Plaintiff saw Dr. Rachel Julian at the University of Alabama-Birmingham outpatient medical center from July 2006 through September 2007. (Tr. 285-87). Dr. Julian reported that Plaintiff did not use drugs during that time, but continued to hear voices and experience some anxiety and mood instability. (Tr. 285). Dr. Julian felt that the voices, anxiety and mood instability "could impair

4

[Plaintiff's] ability to concentrate and follow through with work tasks." (*Id.*). Dr. Julian also noted that Plaintiff's symptoms "may" cause Plaintiff to "have difficulty with inter-personal relationships and dealing with stress." (*Id.*).

## II.    ALJ Decision

Determination of disability proceeds under a five step analysis. 20 C.F.R. § 404.1520(a). First, the Commissioner determines if the claimant is engaged in substantial gainful activity. 20 C.F.R. § 1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he is not deemed to be disabled under the Act. *Id.* Second, the Commissioner determines if the claimant has a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. 1509. If the claimant does not possess such an impairment, he is not disabled. *Id.* Third, the Commissioner decides if the impairment meets or medically equals the criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If it does not meet the listing, the claimant is not disabled. *Id.* Fourth, the Commissioner determines whether the claimant possesses the RFC to do past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant's RFC is what the claimant can do despite his impairments. If the claimant can perform past relevant work, he is not disabled. *Id.* Finally, the Commissioner determines whether the claimant can perform other work based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If he can perform other work, the claimant is not disabled. *Id.* If the claimant is deemed not to be disabled at any point in the process, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform

his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 29, 2004, his alleged onset date of disability. (Tr. 17). The ALJ determined that Plaintiff has the severe combination of impairments of mood disorder, generalized anxiety disorder, and personality disorder not otherwise specified. (*Id.*). However, the ALJ also determined that this combination of impairments does not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). It was the ALJ's finding that because Plaintiff's restriction in activities of daily living was only mild, that any episodes of decompensation were infrequent, and when considering the result of factors such as noncompliance with prescribed medication and substance abuse, the criteria of "paragraph B" were not met. (Tr. 17-18). The ALJ then found that Plaintiff retains the RFC to perform a full range of work, provided he is only required to: follow short, uncomplicated instructions; have casual and limited contact with the public and coworkers; and is able to avoid exposure to hazards. (Tr. 19). Based on the record, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 21). The ALJ also noted that there was evidence in the record suggesting that Plaintiff's substance abuse and dependence played an active role in the intensity and persistence of his symptoms. (Tr. 23).

At the hearing, the ALJ called a vocational expert ("VE") to testify. (Tr. 304). The VE was familiar with Plaintiff's background, having reviewed all of the exhibits. (*Id.*). The VE testified that

an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 304-06). Based primarily on the testimony of the VE, the ALJ determined that Plaintiff not only could perform other work existing in significant numbers, but also could perform past relevant work as a kitchen helper. (Tr. 24).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision remanded for further consideration. (Doc. # 9, at 4). Plaintiff asserts that the ALJ improperly disregarded the opinion of the treating physician, Dr. Julian, without articulating a good cause basis for disregarding her opinion. (Doc. # 9, at 3-4).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations

omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.      Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ gave proper consideration to the opinion of the treating physician.

In *Philips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004), the court explained the appropriate circumstances under which opinions of treating physicians may be disregarded by an ALJ:

> The opinion of a treating physician . . . "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). This Court has concluded that "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons. *Id.*

*Philips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Plaintiff cites this language in support of his argument that the ALJ did not properly consider the opinion of his treating physician, Dr. Julian. (Doc. # 9, at 3). However, contrary to that argument, the ALJ did consider Dr. Julian's opinion and gave the opinion considerable weight. (Tr. 23-24). Dr. Julian's opinion simply does not support Plaintiff's assertion that he is disabled. (Tr. 285-87).

8

The ALJ first considered Dr. Julian's statement of September 27, 2007, that she had been seeing Plaintiff since July 3, 2006, and he had been free of drugs during that time – eighteen months after Plaintiff's alleged onset date of disability. (Tr. 23, 285). The ALJ considered Dr. Julian's statement to support his finding that Plaintiff's "continued use of drugs and alcohol after his alleged onset date is pertinent, even if not material, given his admission that his depression improved when he stopped using drugs and his report to Dr. Beidleman that he was unsure if he had experienced hallucinations independent of drug involvement." (Tr. 23). Plaintiff's inconsistent reports about when he in fact stopped using drugs certainly warranted consideration by the ALJ. Plaintiff's inability to provide medical evidence confirming that he has not used drugs since the alleged onset date of disability certainly bolsters the ALJ's conclusions. However, Dr. Julian's opinion was explicitly and clearly considered in this determination. (Tr. 23). Her opinion simply was not helpful to Plaintiff's argument.

Indeed, the ALJ gave considerable weight to Dr. Julian's opinion. (Tr. 24). However, he found her opinion was consistent with other medical evidence showing that Plaintiff was not disabled. The ALJ correctly noted the language used by Dr. Julian in her September 25, 2007 letter. (Tr. 24, 285). Dr. Julian stated that Plaintiff's symptoms "could" impair his ability to concentrate. (Tr. 285). She also stated that Plaintiff "may" have difficulty dealing with relationships and stress. (*Id.*). Dr. Julian did not state that Plaintiff actually suffered from these difficulties and impairments. (*Id.*). The ALJ properly considered and weighed this language, noting that it is consistent with the opinions of the State agency medical consultants. (Tr. 24). The ALJ also pointed out that Dr. Julian had referred Plaintiff to Vocational Rehabilitation Services in the past, a fact which suggests Dr. Julian believes Plaintiff can work. This may help explain Dr. Julian's apparent unwillingness to

9

clearly and unambiguously confirm that Plaintiff is disabled. Therefore, the court concludes that the ALJ properly considered and weighed the opinion of the treating physician, Dr. Julian.

**VI.     Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of opinion will be entered.

**DONE** and **ORDERED** this     15th     day of March, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE